J-A10026-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ELISABETTA ROBERTS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LILY DEVELOPMENT BAINBRIDGE | : | |
| SOUTH COMPANY, ROBERT VOLPE, | : | |
| AND KELLY WIDMAN | : | No. 1710 EDA 2025 |
| | : | |
| | : | |
| APPEAL OF: ROBERT VOLPE, AND | : | |
| KELLY WIDMAN | : | |

Appeal from the Judgment Entered June 17, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220800502

BEFORE:    STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                              **FILED JULY 30, 2026**

Robert Volpe ("Volpe") and Kelly Widman ("Widman") (collectively,

"Appellants") appeal from the judgment imposed in favor of Elisabetta Roberts

("Roberts") on her claim of a fraudulent transfer under the then-in effect

Uniform Fraudulent Transfer Act[1] ("UFTA").  We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 12 Pa.C.S.A. §§ 5101-5110 (subsequently amended by 2017 Pa. SB 629, eff. Feb. 20, 2018).  The conveyances at issue occurred in December 2017, prior to the February 2018 effective date of the amended and retitled Uniform Voidable Transactions Act, 12 Pa.C.S.A. §§ 5101-5114.  Thus, the prior version of the statute applies to this matter.  For ease of review, we identify citations to the prior statutes by adding "(UFTA)."

We first review a related prior action ("2016 Action") filed by the same plaintiff, Roberts. In 2016, she brought suit against, *inter alia*, Lily Development, L.P. ("Lily Development").[2] A prior Superior Court panel summarized:

This property damage and private nuisance case arose from [Lily Development's] demolition of an existing structure and the construction of three new townhouses at 734-748 Bainbridge Street in Philadelphia between 2014 and 2017. [Lily Development Bainbridge South Company ("LDBSC") owned those properties. Roberts] own[ed] and live[d] in the adjacent property at 730-732 Bainbridge Street. She asserted that her property had been seriously damaged as the result of the negligent demolition and construction activities[.]

**Roberts I**, 251 A.3d 1235 (unpublished memorandum at *1) (record citation omitted). Volpe was the president of Lily Development. **See** Trial Court Decision, 5/7/25, at 2. LDBSC had three initial members: Volpe, Widman, and Lily Development Management Company, LLC.

"On May 8, 2018, the trial court approved a stipulated order for the substitution of parties. Lily Development . . . was removed and replaced with [LDBSC] and Lily Construction, LLC." **Roberts I**, 251 A.3d 1235 (unpublished memorandum at *1 n.1). At this juncture, we summarize that in 2017, LDBSC sold the three completed, developed properties for a total of $4,352,500. In December 2017, LDBSC made several distributions of funds to Volpe, Widman,

---

[2] Another named defendant, Mangual Construction, LLC "was dismissed at a later date." **Roberts v. Lily Development, L.P.**, 251 A.3d 1235 (Pa. Super. 2021) (unpublished memorandum at *1 n.1) ("**Roberts I**"), *appeal denied*, 268 A.3d 1074 (Pa. 2021).

Turquoise Management Company, an entity solely owned by Volpe, and possibly others. It is these transfers to Volpe and Widman that are the subject of the instant litigation.

At the end of January 2018 "the manager of LDBSC, Lily Development Management Company, [LLC,] signed a resolution authorizing LDBSC to cease its affairs and wind up." Trial Court Decision, 5/7/25, at 3. At this time, LDBSC had no assets. Approximately three months later in May 2018, as noted above, Lily Development substituted LDBSC as a defendant in the 2016 Action.

The matter proceeded to trial in August 2018. The jury returned a verdict in favor of Roberts on her claims of negligence and private nuisance.[3] The trial court entered judgment against Lily Construction, LLC, which satisfied it in 2019. Ultimately, in June 2021, the trial court entered judgment against LBDSC in the amount of $291,062.62.[4] **See** Trial Court Decision, 5/7/25, at 2. LBDSC has not paid this judgment.

_____

[3] The jury found in favor of LBSDC on Roberts' additional claim of trespass.

[4] Post-trial, the trial court granted LDBSC and Lily Construction, LLC's motions for judgment notwithstanding the verdict as to the negligence count. On March 16, 2021, this Court reversed in part, remanding for reinstatement of the verdict in favor of Roberts on the negligence claim, but affirming the remainder of the judgment. **See Roberts I**, 251 A.3d 1235 (unpublished memorandum at *16). The Pennsylvania Supreme Court denied allowance of appeal. In June 2021, following remand of the record, the trial court entered the judgment. In December 2021, "an additional $18,780.22 in delay
*(Footnote Continued Next Page)*

A prior panel of this Court summarized the ensuing procedural history:

In April 2019, ["after having received no response to its correspondence requesting payment,"[5]] Roberts sent [LDBSC] post-judgment interrogatories in aid of execution and post-judgment requests for production of documents. [LDBSC] did not respond. Roberts filed a motion to compel[, which the trial court granted.] That same month, [LDBSC] sent Roberts incomplete responses to the interrogatories, which excluded relevant information. It provided no information prior to May 8, 2018, which is when [LDBSC] became a party to the litigation.

In August 2019, Roberts sent a notice of asset deposition to [LDBSC], scheduling the deposition for September 17, 2019, and stating Roberts would take the deposition of Volpe or "an alternative representative [of LDBSC." LDBSC] failed to fully respond to the discovery requests or produce Volpe or an alternative representative for deposition. . . .

*Roberts v. Lily Development, L.P.*, 284 A.3d 893 (Pa. Super. 2022) (unpublished memorandum at *2) ("*Roberts II*") (record citations omitted). Id. at **3-4.

In September 2019, Roberts filed a second motion to compel discovery responses and a motion for sanctions. The trial court granted both, directing LDBSC to: (1) "provide full and complete responses, without objections," to Roberts' discovery requests within fifteen days; (2) produce Volpe or an alternate representative for an asset deposition within fifteen days; and (3) pay sanctions of $250. *Id*. (unpublished memorandum at *4).

---

damages were awarded to [Roberts] and against LDBSC." Trial Court Decision, 5/7/25, at 2.

[5] Trial Court Opinion, 12/3/21, at 2.

Two months later, in December 2019, LDBSC produced 735 pages of documents. The trial court found, however, that LDBSC only "partially produce[d] some of [Roberts'] requested financial records,[]" and "the little discovery [provided] appeared to intentionally exclude relevant information and documents prior to May 8, 2018.[]" Trial Court Opinion, 12/3/21, at 3, 8 (footnotes omitted).

In March 2021 — fifteen months later — Roberts filed a third motion to compel and a motion for sanctions. In a written response, LDBSC "acknowledge[d] that it had not fully complied with the prior discovery, but claimed that its failure to do so was justified as [it] had wound down its business affairs and further discovery would serve no purpose other than to harass" LDBSC. *Id*. at 3.

The trial court granted Roberts' motions. The court found "the nature and severity of [LDBSC's] discovery violations," LDBSC's "willfulness[,] bad faith," and "continued disregard of [its] orders," and "the capability of [LDBSC] to easily cure the prejudice" to Roberts presented "extreme circumstances." *Id*. at 7-8 (unnecessary capitalization omitted). The court directed LDBSC "to produce an authorized representative for the . . . discovery of assets within five days," and imposed $1,000 sanctions on LDBSC and Volpe for failing to comply with the prior orders, as well as $250 for every day they failed to produce an authorized representative for deposition. *Roberts II*, 284 A.3d 893 (unpublished memorandum at *4).

LDBSC appealed from this discovery order. On August 3, 2022, this Court reversed in part, holding that the sanctions against Volpe in his individual capacity were improper because he was not a party to the action, "and no court order directed his individual compliance prior to the order imposing sanctions." *Id*. at *13. However, the Court did not reach the merits of any additional claims and affirmed the remaining portions of the trial court's order.

In March 2022, Roberts deposed Widman. In May 2022, Volpe appeared for his deposition in aid of execution.

In August 2022, Roberts filed the underlying action ("2022 Action") against LDBSC, Volpe, and Widman. She raised two counts: (1) a fraudulent conveyance under the UFTA; and (2) piercing the corporate veil. In a joint answer and new matter, Appellants and LDBSC averred that Roberts' complaint was untimely under the UFTA's general four-year statute of limitations, as she filed it more than four years after the subject 2017 transfers. Roberts responded that the documents provided by LDBSC in December 2019 were inadequate, and she did not learn of the alleged fraudulent transfers until Volpe's and Widman's 2022 depositions. *See* N.T., 1/16/25, at 34-35. The trial court agreed and ruled that Roberts was entitled to file under the UTFA's extended filing period, of "one year after the transfer or obligation was or could reasonably have been discovered by" her. 12 Pa.C.S.A. § 5109(1) (UFTA).

The instant 2022 Action proceeded to a non-jury trial in January 2025. Roberts testified that at the time the parties substituted LDBSC as a defendant in the 2016 Action, she did not know LDBSC was insolvent, and had she known, she would not have agreed to it. Additionally, Roberts called Volpe, and Widman on direct examination; she also called her present attorney, who had also represented her in the 2016 Action, to testify. Appellants and LDBSC presented one witness: an expert in corporate governance.

On the merits of Roberts' claims, the trial court found she sufficiently established that LDBSC's 2017 distributions to Volpe and Widman were fraudulent transfers under the UFTA. The court awarded Roberts $310,780.09, of which Volpe shall pay $232,146.69 and Widman shall pay $78,633.40.[6] However, the trial court denied relief on Roberts' second count, finding she failed to present "sufficient facts to overcome the strong presumption against piercing the corporate veil." Trial Court Decision, 5/7/25, at 13.

Both parties filed post-trial motions. The trial court granted Roberts' request for pre-judgment interest and awarded her: (1) $53,755.81 against Volpe; and (2) $18,218.214 against Widman. However, the court denied LDBSC and Appellants' post-trial motion. The court entered judgment on June

---

[6] In a June 16,2025 order, the trial court acknowledged it had misstated the judgment and pre-judgment interest amounts initially entered against Volpe by, respectively, thirteen cents and seven cents. The court amended the awards to the correct amounts.

17, 2025. Appellants filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellants present twelve issues for our review:

1. Did the trial court commit reversible error by applying the incorrect legal standard for determining whether the "discovery rule" exception applies to . . . Roberts' Count I (Fraudulent Transfers) to toll the four-year statute of limitations imposed by the [UFTA]?

2. Did the trial court commit reversible by improperly shifting the burden of proof from . . . Roberts to [LDBSC, Volpe, and Widman] for the application of the "discovery rule" exception to . . . Roberts' Count I (Fraudulent Transfers) to toll the four-year statute of limitations imposed by the [UFTA]?

3. Did the trial court commit reversible error by finding . . . Roberts acted with reasonable diligence warranting the application of the "discovery rule" exception to . . . Roberts' Count I (Fraudulent Transfers) to toll the four-year statute of limitations imposed by the [UFTA]?

4. Did the trial court commit reversible error by failing to conduct a factual inquiry into the written discovery indisputably in . . . Roberts' possession as of December 2019 that included all necessary documents for . . . Roberts to discover the transfers held to be fraudulent transfers under the [UFTA]?

5. Did the trial court commit reversible error by determining that there was new information . . . Roberts received during the corporate designee deposition of . . . Volpe that could not have been known from the December 2019 production but which . . . Roberts required to discover the transfers held to be fraudulent transfers under the [UFTA]?

6. Did the trial court commit reversible error by determining that the "discovery rule" exception applies to . . . Roberts' Count I (Fraudulent Transfers) to toll the four-year statute of limitations imposed by the [UFTA] because the discovery responses in the underlying action served by [LDBSC] was severely deficient?

- 8 -

7. Did the trial court commit reversible error by determining that the "discovery rule" exception applies to . . . Roberts' Count I (Fraudulent Transfers) to toll the four-year statute of limitations imposed by the [UFTA] because the discovery responses in the underlying action served by [LDBSC] warranted sanctions against it?

8. Did the trial court commit reversible error by relying on a determination of when . . . Roberts actually "discovered" the transfers held to be fraudulent transfers under the [UFTA]?

9. Did the trial court commit reversible error by shifting the burden of proof to . . . Volpe to show why Volpe could not have known that [LDBSC] had liability exposure to Roberts?

10. Did the trial court commit reversible error by imputing the knowledge of Lily Development . . . , a non-party to this action, to [LDBSC]?

11. Did the trial court commit reversible error by determining that [LDBSC] had been "threatened with suit" prior to the transactions at issue?

12. Did the trial court commit reversible error by not dismissing [Roberts'] fraudulent transfer claim for [Roberts'] failure to join indispensable parties?

Appellants' Brief at 3-6.

Preliminarily, we disapprove of Appellants' excessively long Rule 1925(b) statement, which sets forth thirty-nine claims of trial court error. "We repeatedly have emphasized that a Rule 1925(b) statement must be 'sufficiently concise and coherent such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith.'" **Bayview Loan Servicing, LLC v. Wicker**, 163 A.3d 1039, 1043 n.2 (Pa. Super. 2026) (citation omitted); **see also** Pa.R.A.P. 1925(b)(4)(i)-(ii), (iv) (providing that a Rule 1925(b)

statement "shall set forth only those errors that the appellant intends to assert," "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge," and "should not be redundant or provide lengthy explanations as to any error").

Additionally, we note with displeasure the excessive number of claims raised in Appellants' brief. We remind Appellants' counsel: "The effectiveness of appellate advocacy may suffer when counsel raises numerous issues, to the point where a presumption arises that there is no merit to any of them." *Commonwealth v. Snyder*, 870 A.2d 336, 340 (Pa. Super. 2005) (citation omitted). Furthermore, although Appellants set forth twelve issues in their statement of questions involved, the argument section of their brief includes seven main headings. Finally, Appellants do not clearly delineate their numerous claims, but rather repeat many of them under multiple, different headings. We remind counsel that our Rules of Appellate Procedure require the argument to "be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Nevertheless, as the trial court has cogently addressed Appellants' claims, we do not find waiver. For ease of discussion, we have identified eight main arguments, all of which challenge the trial court's statute of limitations ruling.

We first set forth the relevant law. "Issues involving the interpretation of a statute of limitations are questions of law for which our standard of review is *de novo* and our scope of review is plenary." **Erie Insurance Exchange v. Bristol**, 174 A.3d 578, 585 n.13 (Pa. 2017)

This Court has explained:

The UFTA . . . sets forth circumstances under which certain transfers or obligations incurred by a debtor may be deemed to be fraudulent. When those circumstances are satisfied, the statute allows a creditor to avoid the transfer or obligation. . . .

**K-B Bldg., Co. v. Sheesley Constr., Inc.**, 833 A.2d 1132, 1135 (Pa. Super. 2003). Pertinently,

the statute-of-limitations provision of the UFTA, section 5109 . . . provides in relevant part as follows:

A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

(1) . . . **within four years after the transfer was made** . . . **or, if later, within one year after the transfer . . . was or could reasonably have been discovered by the claimant** . . ..

**Id**. at 1136 (unnecessary capitalization omitted and emphasis added).

Although this panel has not discovered decisional authority specifically governing how to review or apply the section 5109(1) one-year extended

statute of limitations under the UFTA, we note Pennsylvania courts have addressed the so-called "discovery rule" generally as follows:[7]

> Generally, "a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted." . . .
>
> Acting as an exception to this general rule, however, is the discovery rule, which originated in cases where the plaintiff's injury or its cause was neither known nor reasonably ascertainable.[] Accordingly, the discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct. We have explained that reasonable diligence is not an absolute standard but, rather, is "what is expected from a party who has been given reason to inform himself of the facts upon which his right of recovery is premised."

*Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) (citations and footnote omitted).

"It is the party that asserts application of the discovery rule that bears the burden of proving that reasonable diligence was exercised." *Id*. at 893.

> [I]t is well-settled that the reasonable diligence standard is objective, as the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law. That being said, the objective reasonable diligence standard is "sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question," and, as such, "is to be applied with reference to individual characteristics."
>
> Under this reasonable diligence standard, a plaintiff's actions are examined to determine whether the plaintiff demonstrated "those qualities of attention, knowledge, intelligence and

_____

[7] The trial court and the parties have similarly relied on Pennsylvania decisions discussing the discovery rule generally.

judgment which society requires of its members for the protection of their own interest and the interest of others." . . .

*Id*. at 893 (citations omitted).

For ease of discussion, we now set forth the trial court's analysis. As noted above, the trial court found: the UTFA's extended one-year statute of limitations applied; the "discovery" date was May 2022, when Volpe submitted to the asset deposition; and thus Roberts' August 2022 filing of the complaint was timely. Trial Court Decision, 5/7/25, at 8. The trial court reasoned as follows.

Although LDBSC provided 735 pages of documents in December 2019, "this production was severely deficient such that it warranted sanctions," and LDBSC and Volpe "engaged in severe discovery violations constituting bad faith." *Id*.; *see also* 1925(a) Opinion, 8/29/25, at unnumbered 3. In granting Roberts' third motion to compel, the trial court "specifically rejected the notion that the December 2019 document production constituted full and complete responses to discovery." 1925(a) Opinion, 8/29/25, at unnumbered 3-4.

The trial court considered that the relevant inquiry for discovery rule purposes was not Roberts' "actual knowledge, but whether the knowledge was known, or through the exercise of diligence, knowable to" her. Trial Court Decision, 5/7/25, at 7-8. The trial court rationalized: Roberts "could not have reasonably discovered" the fraudulent nature of the December 2017 transfers "with incomplete asset discovery;" it was "not a reasonable expectation for

[Roberts] to discover the transactions and their potentially fraudulent nature based on severely deficient asset discovery;" and Roberts "could not have reasonable discovered [the] fraudulent nature until" Volpe appeared for the asset deposition in May 2022. *Id*. at 8; **see also** 1925(a) Opinion, 8/29/25, at unnumbered 3. The court concluded that Roberts timely filed the underlying complaint within one year of the May 2022 deposition.

Additionally, the trial court found Roberts did exercise "reasonable diligence to discover the transfers and their fraudulent nature." Order, 6/11/25, at 2 n.1. In April 2019, having received no response from LDBSC to her correspondence requesting payment of the judgment, Roberts sent post-judgment interrogatories in aid of execution and requests for production of documents. Over the next twenty-three months, LDBSC failed to comply and Roberts filed a total of three motions to compel discovery, all of which the trial court granted.

We now review Appellants' claims. They first aver the trial court employed an incorrect standard — "one of its own creation" — to determine whether the discovery rule applied. Appellants' Brief at 17. Appellants maintain that pursuant to our decisional authority, the court should have: (1) "determine[d] what information Roberts needed to 'discover,'" that she did not already possess, for her claim of fraudulent transfer; (2) examined the diligence undertaken by Roberts during the four-year statute of limitations; and (3) determined whether, despite Roberts' reasonable diligence, she could

- 14 -

not have discovered her injury and the cause. *Id*. at 19-20. Instead, the trial court found incorrectly "that Roberts could not have been reasonably expected to 'discover' the . . . transactions and their potentially fraudulent nature." *Id*. at 20.

Second, Appellants assert that the trial court erred in shifting the burden of proof from Roberts, who bore the burden of establishing the applicability of the discovery rule, to them. Appellants challenge the trial court's finding that they "had the opportunity to establish that the 2019 document product was sufficient at trial in the present matter." *Id*. at 30. Appellants maintain that they had no burden "to 'convince' the [trial] court of a negative." *Id*. at 44 (unnecessary capitalization omitted). Appellants also assert the trial court erred in finding "Volpe failed to provide a convincing explanation as to why he could not have known that LDBSC had a liability exposure." *Id*. Appellants insist that "the record is devoid of any evidence that [Roberts] ever threatened LDBSC with a lawsuit" or attempted to name LDBSC as a defendant in the 2016 Action. *Id*. at 45.

Additionally, Appellants contend Roberts failed to meet her burden of proof, as she "failed to present any evidence that she exercised reasonable diligence to discover the" December 2017 transfers. *Id*. at 37. In support, Appellants reiterate that Roberts "knew she had been injured and knew . . . the cause of her injuries;" "she already had a judgment against LDBSC;" and the trial "court conducted no factual inquiry, nor could it have . . . , because

- 15 -

the record is devoid of any factual predicate establishing Roberts' diligence." *Id*. at 36 (unnecessary capitalization and emphasis omitted). Appellants also reason that after Roberts received the 2019 documents, she "never alleged or offered evidence that the production was deficient discovery" and notably "never sought additional written discovery from LDBSC [or Appellants] in aid of execution or in the current action." *Id*. at 39 (unnecessary capitalization and emphasis omitted).

After careful review of the record, Appellants' arguments, and the trial court's opinions, we determine no relief is due. First, the trial court applied the proper inquiry for whether the discovery rule should apply: it was not Roberts' "actual knowledge, but rather whether the knowledge was . . . through the exercise of diligence, knowable to" her. Trial Court Decision, 5/7/25, at 7-8. The court also considered the language of section 5109(1) of the UFTA: a plaintiff may file an action within "one year after the transfer . . . was or ***could reasonably have been discovered*** by the claimant." 1925(a) Opinion, 8/29/25, at 3 (*quoting* 12 Pa.C.S.A. § 5109(1) (UFTA)) (emphasis added). In denying Appellants' post-trial motion raising this same claim, the trial court reasoned that, notwithstanding its prior statement as to "whether it could 'reasonably expect' [Roberts] to discover the fraudulent transfers," it had "applied the reasonable diligence standard." 1925(a) Opinion, 8/29/25, at 4.

Second, the trial court found Roberts did exercise reasonable diligence. In its order denying Appellants and LDBSC's post-trial motion, the court referred to its "December 3, 2021 opinion, which outlined [Roberts'] efforts to achieve full and complete asset discovery, including the eventual May 2022 asset deposition." Order, 6/11/25, at 2 n.1 (unnecessary capitalization omitted). The December 2021 opinion, in turn, summarized Roberts': (1) initial correspondence to LDBSC requesting payment of the judgment; (2) April 2019 service of post-judgment interrogatories in aid of execution and post-judgment requests for production of documents; (3) repeated requests for an LDBSC representative to participate in an asset deposition; (4) motions to compel discovery, filed in June 2019, September 2019, and March 2021; and (5) two motions for sanctions against LDBSC, both granted. On appeal, LDBSC ignores that Roberts pursued all of the above litigation after the court properly entered judgment against LDBSC, specifically to learn information about LDBSC's assets and aid execution of the judgment it owed. For the foregoing reasons, we determine no relief is due on LDBSC's first two arguments.

In their third claim, Appellants contend that in any event, the trial court erred in finding that the December 2019 document production did not contain all the information necessary for Robert to bring a fraudulent transfer claim. Appellants emphasize that the 735 pages of documents included: (1) all of LDBSC's tax returns; (2) "QuickBooks ledgers," which showed "all of LDBSC's

transactions;" (3) bank records and record documents; and thus (4) "all the documents necessary to identify LDBSC's December 2017 transactions" that were allegedly fraudulent. Appellants' Brief at 22, 32. Appellants also cite Roberts' admission at trial that she "never saw" the December 2019 documents, and her attorney, who also testified, "failed to testify as to any diligence undertaken to 'discover'" the relevant transfers made by LDBSC. *Id*. at 28-29 (*citing* N.T., 1/15/25, at 45; N.T., 1/16/25, at 5-8). Appellants further reason that Roberts also "already held a judgment in her favor and against LDBSC" and thus "had full, actual knowledge of her damages," as well as "what and who caused those damages." *Id*. at 20-21. Thus, there was "nothing left" to discover. *Id*. at 21.

After careful review of the record, we determine no relief is due. The trial court extensively addressed its prior findings that despite the number of pages provided, LDBSC's December 2019 production of documents was deficient, such that the court imposed sanctions. The court described LDBSC's discovery violations as "severe," "willful[]" and showing "bad faith," exhibiting a "continued disregard of court orders," and constituting "extreme circumstances." Trial Court Opinion, 12/3/21, at 7-8. The court also observed that LDBSC "appeared to intentionally exclude relevant information and documents prior to May 8, 2018," the date LDBSC was substituted as a defendant in the prior action. *Id*. at 8. Finally, Appellants do not dispute that, in responding to Roberts' third motion for sanctions, it "acknowledged that it

had not fully complied with the prior discovery, but claimed that [it was] justified as [it] had wound down its business affairs," and furthermore claimed Roberts' discovery requests were intended to "harass" it. *Id*. at 3. We conclude no relief is due on Appellants' third claim.

In their fourth claim, Appellants assert that the trial court erred finding that Volpe's May 2022 deposition provided Roberts with new or relevant information necessary for her claim, and that she could not have previously reasonably discovered the fraudulent nature of the transfers. *See* Appellants' Brief at 24; *see also id*. at 42-43 (arguing "Volpe's deposition [had] no bearing on whether Roberts, through the exercise of reasonable diligence, could have discovered LDBSC's transfers to [Appellants] from the [December 2019] 735-page production"). Appellants summarize that in his deposition, "Volpe repeatedly testified that he did not remember or did not know the answer to Roberts' . . . questions about the December 2017 transactions." *Id*. at 34. Appellants point out that in her own complaint, Roberts averred that "as a result of Widman's failure to provide any substantive responses during his deposition," Roberts deposed Volpe, who "just like Widman, refused to provide substantive responses to [the] questions." *Id*. at 23. Appellants further argue that neither Roberts nor the trial court identified any testimony from Volpe's deposition that related to the alleged fraudulent transfers.

After careful review of the record, we determine no relief is due. First, Appellants cite isolated portions of Roberts' complaint — merely her

averments that neither Widman nor Volpe "provide[d] substantive responses" in their depositions. Appellants' Brief at 23. As context, we observe that Roberts' complaint also explained or alleged that Volpe testified he did "not know what position he held within LDBSC[,] whether he [was] still a member of LDBSC," who the officers of LDBSC were, nor whether Widman was ever an officer. Complaint, 8/3/22, at 5-6. Indeed, Volpe initially "testified that he never heard of Lily Development Management Company but later testified that he was associated with" it. *Id*. at 6 n.2.

In any event, Roberts' complaint also cited Volpe's and Widman's deposition transcripts for their testimony that: LDBSC "sent . . . a certificate of dissolution to the Pennsylvania Department of State to dissolve the company;" "LDBSC allegedly stopped operating once it sold all of its [properties] on Bainbridge Street;" and "[w]hile LDBSC and its members knew that there was pending litigation against LDBSC, LDBSC sold all of its real estate assets and decided to distribute the money from the sale to the individual members." *Id*. at 7-8. We offer no opinion as to the merits of these complaint allegations, but rather cite them: (1) to provide context, missing from Appellants' brief, for Roberts' averment that Volpe and Widman refused "to provide any substantive responses during . . . deposition;" and (2) to refute LDBSC's claim that Roberts did not identify any portion of the depositions relating to the fraudulent transfers. Appellants' Brief at 23. For the foregoing reasons, LDBSC's fourth argument is meritless.

In their fifth issue, Appellants allege the trial court erred in considering the sanctions imposed on LDBSC in the 2016 Action. Appellants maintain these sanctions "did not relate to the document production," but instead were for the failure to present a corporate representative for a deposition. Appellants' Brief at 40. In any event, Appellants reason, the sanctions were "overturned by this Court on appeal." *Id*. at 40.

We determine no relief is due. First, Appellants' claim, that the discovery sanctions in the 2016 action sanctions "did not relate to the document production," is belied by the record. *Id*. We reiterate that the trial court awarded sanctions in June 2021 for **both** LDBSC's failure to repeatedly provide the documents requested by Roberts and failure to present a representative for an asset deposition. Furthermore, as discussed above, on appeal from that discovery order, the Superior Court reversed the sanctions imposed on Volpe individually, solely on the grounds that Volpe was not a party to the 2016 Action and the trial court had not directed his individual compliance before imposing sanctions on him. **See Roberts II**, 284 A.3d 893 (unpublished memorandum at **9-13). The panel did not otherwise address the propriety of the sanctions, and affirmed the remaining portions of the discovery order. As Appellants fail to present a meritorious argument, we deny relief on their fifth claim.

Before reviewing Appellants' sixth issue, we first summarize that in assessing Volpe's trial testimony in the instant matter, the trial court found

not credible his statement that he was not aware "of a potential liability against LDBSC based on the [2016 A]ction against Lily Development[, where] Volpe participated in the [that] action as a representative of Lily Development." Trial Court Decision, 5/7/25, at 4. On appeal, Appellants construe that the trial court improperly "imput[ed] the knowledge of Lily Development[,] a non-party in this action[,] to LDBSC." Appellants' Brief at 46 (unnecessary capitalization omitted). Appellants insist that while Volpe was the president of Lily Development, "the record [was] devoid of the ownership structure of Lily Development[.]" *Id*. at 47. Appellant concludes the trial court once again "shirk[ed] Roberts' burden of proof to presume a conclusion against LDBSC" and Appellants. *Id*. at 48.

In their seventh issue, Appellants claim the trial court erred in finding "LDBSC had been threatened with a lawsuit" by Roberts before it made the December 2017 transfers. *Id*. at 48-49.

Appellants' desired relief is not clear. To the extent they continue to challenge the trial court's statute of limitations ruling, we determine no relief is due. The questions of whether the trial court improperly imputed one business' "knowledge" to another, and whether Roberts "threatened" LDBSC with a lawsuit, are relevant to the question before us — whether the court erred in finding Roberts met her burden to show the UFTA's one-year extended discovery-rule statute of limitations applied, and whether she exercised reasonable diligence.

- 22 -

We note that Appellants' arguments may correlate to the statutory factors for determining the merits of a UTFA fraudulent transfer claim. For example, section 5104(b) provided that, in determining whether a defendant had "actual intent" "to hinder, delay, or defraud any creditor," a court may consider whether "the transfer . . . was to an insider," and whether, "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." 12 Pa.C.S.A. § 5104(b)(1), (4) (UTFA). Here, the trial court reviewed the statutory factors in finding in favor of Roberts on her fraudulent transfer claim. *See* Trial Court Decision, 5/7/25, at 8-11.

To the extent, then, that Appellants challenge the trial court's findings or verdict, we would determine they have waived such a claim, for failure to develop an argument with discussion of relevant authority. *See* Pa.R.A.P. 2119(a) (requiring argument to include "such discussion and citation of authorities as are deemed pertinent"). First, Appellants do not articulate any such claim that on the merits, the trial court erred in finding the transfers were fraudulent under the UTFA. Moreover, Appellants do not discuss any law governing the statutory factors, nor even cite the relevant section 5104 subsections themselves. Accordingly, we determine their sixth and seventh issues are meritless.

In their eighth issue, Appellants assert the trial court erred in not dismissing Roberts' fraudulent transfer claim on the grounds of her failure to join indispensable parties "Turquoise Management and all investors in

LDBSC."[8]  Appellant's Brief at 51-52.  Appellants contend that Roberts could not "selectively seek the reversal of transfers by LDBSC," and instead "was required to seek the reversal of all transfers that" she believed were fraudulent.  *Id*. at 52.

We first emphasize that Appellants have cited no legal authority in support of their claims that "Roberts cannot selectively seek the reversals of transfers by LDBSC," and she "was required to seek reversal of all" alleged fraudulent transfers.  *Id*.  On this basis, we determine no relief is due.  *See* Pa.R.A.P. 2119(a).

Furthermore, we note the trial court's following discussion of this claim. "An indispensable party is one whose 'rights are so connected with the claims of the litigants that no decree can be made without impairing or infringing upon those rights."  1925(a) Opinion, 8/29/25, at unnumbered 13 (*citing Sprague v. Casey*, 550 A.2d 184, 189 (Pa. 1988)).  Section 5108(b) of the UTFA provided that, in granting relief, a trial court may enter judgment against:

> (i) the first transferee of the asset or the person for whose benefit the transfer was made; or
>
> (ii) an immediate or mediate transferee of the first transferee, other than:
>
>> (A) a good faith transferee that took for value; or

_____

[8] We reiterate that before its dissolution, LDBSC also made distributions to Turquoise Management Company, an entity solely owned by Volpe.

> (B) an immediate or mediate good faith transferee of a person described in clause (A).

*Id*. (*quoting* 12 Pa.C.S.A. § 108(b)(1)(i)-(ii)(A)-(B)). The trial court reasoned that "nothing in the [UTFA prohibited Roberts] from selectively seeking [judgment] specific to the transfers to Widman and Volpe." *Id*.

On appeal, Appellants wholly ignore this reasoning and do not address it. Instead, as noted above, they baldly argue that "Roberts failed to join" other recipients of transfers made by LDBSC. Appellants' Brief at 52. We do not review the propriety of the trial court's reasoning, as Appellants have made no challenge to it. We remind counsel that this Court is an error correcting court, and in the absence of any meaningful challenge to the trial court's basis for denying relief, we cannot find court error. *See Morrissey v. St. Joseph's Preparatory School*, 323 A.3d 792, 804 (Pa. Super. 2024).

For the foregoing reasons, we determine that none of Appellants' claims merit relief. We thus affirm the judgment entered in favor of Roberts.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/30/2026

- 25 -